Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6398 | **DATE** | 5/2/2002 |
| **CASE TITLE** | PAULETTE FIELD vs. TRANS UNION LLC, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant CSC Credit Services, Inc.'s motion for summary judgment [48-1] is granted. Defendant CSC's motion to strike expert report and bar opinion testimony at trial [52-1] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 03 2002 date docketed | |
| | Notified counsel by telephone. | | | 68 |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/2/2002 date mailed notice | |
| CB | courtroom deputy's initials | 02 MAY -2 PM 4:00 Date/time received in central Clerk's Office | CB7 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULETTE FIELD )
)
Plaintiff, ) No. 01 C 6398
)
v. ) Suzanne B. Conlon, Judge
)
TRANS UNION LLC, et al. )
)
Defendants. )
)

DOCKETED
MAY 0 3 2002

## MEMORANDUM OPINION AND ORDER

Paulette Field sues Trans Union LLC, CSC Credit Services, Inc. ("CSC"), Experian Information Services, Inc., American Express Travel Related Services, Inc, and Advanta Mortgage Corp., USA for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Counts I-V), defamation (Count VI), invasion of privacy (Count VII), and negligence (Count VIII). Count II is the only claim asserted against CSC.[1] CSC moves for summary judgment.

## BACKGROUND

I. **Local Rule 56.1 Statement of Additional Facts**

Field submits a Local Rule 56.1(b)(3)(B) statement of additional facts. However, Field fails to support various paragraphs of her statement of additional facts with citation to the record. Local Rule 56.1(b)(3)(B) requires paragraphs to include "references to affidavits, parts of the record, and other supporting materials[.]" *See Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 286 (7th Cir. 1997)

---

[1] All other defendants were voluntarily dismissed from this action.

1

(affirming district court's refusal to consider portions of plaintiff's statement of additional facts that were not supported by specific references to the record). "[C]ourts are not obliged in our adversary system to scour the record looking for factual disputes." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Accordingly, the court disregards the following paragraphs in Field's Local Rule 56.1(b)(3)(B) statement of additional facts: ¶¶ 86-89, 92-97, 100-112.

## II.  Statement of Facts

All facts are undisputed unless otherwise noted. Field learned she was a victim of identity theft in June 1999, when she received an invoice from a J.C. Penney's credit card she did not own. Shortly thereafter, Field discovered the theft included multiple mortgage loans and credit cards obtained with Field's credit history. The perpetrators obtained $875,952 in credit using Field's personal identification and credit information. Field contacted CSC on June 23, 1999 and requested a consumer credit report. CSC is a consumer reporting agency engaged in the practice of assembling consumer credit information for the purpose of furnishing consumer reports to third parties. CSC sent Field a report and fraud systems guide on June 30, 1999. CSC referred the matter to its fraud department. Field disputed information contained in the credit report. Specifically, Field challenged the accuracy of an address displayed on her credit report, and three accounts from Montgomery Ward, J.C. Penney, and Beneficial National Bank. Field contested thirteen company inquiries into her credit history.

In response to consumer disputes, CSC generally refers the matter to its fraud department, which attempts to verify the challenged information. When conducting a reinvestigation of disputed items, the credit provider is sent an automated consumer disputed verification form ("automated verification form") or a manual consumer dispute verification form ("manual verification form").

The credit provider is expected to complete the verification form and return it within 30 days.

CSC sent Field an updated report on August 6, 1999. CSC placed a fraud warning at the top of the report, added her consumer fraud complaint at the end of the report, deleted the contested addresses, updated Field's name, and deleted ten inquiries and the Beneficial National Bank account. However, CSC advised Field that Montgomery Ward and J.C. Penney verified her accounts were correctly reported. CSC altered Field's credit report to reflect the J.C. Penney entry as "Dispute Resolut Pending," which meant the entry was disputed. CSC changed the Montgomery Ward entry to show Field did not have a balance remaining and was not past due on payments. In response to the April 6th report, Field sent CSC a letter disputing the Montgomery Ward account, a new Countrywide Mortgage account, and "all inquiries made on [her] credit history from the date of 8/18/98 to the present." Def. 56.1 Facts at ¶ 27. In a September 28, 1999 report, CSC deleted the Countrywide Mortgage and Collateral Mortgage accounts. CSC revised Field's report to reflect "Disput Resolut Pending" on the Montgomery Ward account after it received a completed automated verification form. In an October 8, 1999 letter, Field challenged the Montgomery Ward account and enclosed a fraud statement from Montgomery Ward. CSC sent Field a revised credit report on October 19, 1999. CSC deleted the Montgomery Ward account and six inquiries from Field's report. In an October 25, 1999 letter, Field disputed three Advanta Mortgage Corp. ("Advanta") accounts that appeared on her October 19th report. On November 1, 1999, CSC sent Advanta an automated verification form for reinvestigation. In a November 22, 1999 credit report, CSC stated it had reinvestigated the Advanta accounts and verified the accounts belonged to Field. Field responded in a November 27, 1999 letter challenging the Advanta accounts and expressing her concern about a Pierce & Associates credit inquiry. CSC sent Field a revised December 9, 1999 report and advised

Field to contact the disputed credit providers. Field contested the December 9th report in another letter. CSC sent Field a letter and report on January 6, 2000 and informed her CSC had verified the Advanta accounts. Field contested the accounts. In a February 7, 2000 credit report, CSC deleted three Advanta accounts, and altered the report to reflect the J.C. Penney account was closed due to a lost or stolen card. In an April 27, 2000 report, two new accounts were reflected – NIKO Credit Services and New Century Mortgage. Field disputed those accounts in a May 3, 2000 letter. CSC deleted the NIKO Credit Services and New Century Mortgage accounts, and two credit inquiries in her June 15, 2000 report. Shortly thereafter, Field complained about "fraudulent information on her reports", and CSC sent Field a form to complete. Def. 56.1 Facts at ¶ 51-52. Field did not dispute credit information in CSC's November 25, 2000 credit report.

Field claims she suffered stress, anxiety, frustration, and anger as a result of her credit problems. Field was not denied credit, extended credit on a less favorable basis, or had a credit decision delayed because of a CSC credit report. Field sought treatment from Heidi Price, a therapist, for emotional problems after her discovery of the identify theft. In their first session, Ms. Price noted Field's problems arose from being a single parent, having a new job, and her identify theft. Field did not consider CSC as the source of her anxiety. Field did not discuss her identity theft in her three remaining therapy sessions, and she did not mention CSC to Price. Field does not recall mentioning CSC or its credit reports to friends or relatives. CSC never called Field at work. Field mentioned her identity theft when she applied for a home mortgage, but she volunteered that information to preempt future credit problems. Field states she has on-going anxiety about applying for future credit because of the identity fraud.

4

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). If the moving party meets this burden, the nonmovant must then respond by setting forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e).

### II. FRCA Claim

The FCRA was enacted to ensure "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Field asserts CSC violated three FRCA provisions – §§ 1681*e*(b), 1681*i*(a)(5) and 1681*i*(a)(1)(A). Section 1681*e*(b) provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow

5

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681*e*(b). Section 1681*i*(a)(5) requires "[a] consumer reporting agency [to] maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted[.]" 15 U.S.C. § 1681*i*(a)(5)(C). Section 1681*i*(a)(1)(A) requires CSC to reinvestigate any item disputed by the consumer.

It is undisputed CSC is a "consumer reporting agency" under 15 U.S.C. § 1681*a*(f), the credit reports produced are "consumer report[s]" under § 1681*a*(d), and Field is a "consumer" under § 1681*a*(c). Sections 1681*n* and 1681*o* allow private right of actions for willful and negligent noncompliance with the FCRA and recovery for actual damages, attorney's fees and costs, and punitive damages for willful noncompliance. *Casella v. Equifax Credit Information Servs.*, 56 F.3d 469, 473 (2d Cir. 1995).

To state a § 1681*e*(b) negligent noncompliance claim, Field must demonstrate: (1) inaccurate information was included in her consumer credit report; (2) the inaccuracy was due to CSC's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Field suffered injury; and (4) her injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). Section 1681*i*(a)(1)(A) liability is imposed when a credit report contains a factual deficiency or error that could have been remedied by reinvestigation. *Gaudreau v. Trans Union*, No. 00 C 50356, 2001 WL 936122, at *2 (N.D. Ill. Aug. 17, 2001). A negligent violation of § 1681*i* and § 1681*e*(b) subjects the credit reporting agency to liability for actual damages. 15 U.S.C.A. §§ 1681*o*; *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986).

## A. Reasonable Procedures under § 1681e(b)

A consumer reporting agency is required to follow reasonable procedures to assure maximum possible accuracy of information contained in a consumer credit report. 15 U.S.C. § 1681e(b). Reasonable procedures are defined as measures "a reasonably prudent person would [follow] under the circumstances." *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir.1982). "Judging the reasonableness of a [credit reporting] agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Philbin*, 101 F.3d at 965. A credit reporting agency is not automatically liable when it prepares an inaccurate credit report. *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994). Indeed, the FRCA "does not make reporting agencies strictly liable for all inaccuracies." *Id.* (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1996)).

In *Henson*, the Seventh Circuit held a credit reporting agency was not liable under the FRCA when it reported inaccurate information obtained from a court's judgment docket absent prior notice the information was incorrect. 29 F.3d at 284. The court determined to require a credit reporting agency to verify information contained in court documents would be unduly burdensome and inefficient. *Id.* The court noted a credit reporting agency was not required to go beyond information it received and conduct additional research unless it had prior notice the source was unreliable. *Id.*

The crux of Field's § 1681e(b) claim is that CSC's method of reporting information in consumer credit reports based on information obtained from credit providers is unreasonable. Field's assertion lacks merit. *Henson* expressly rejected a requirement for credit reporting agencies to engage in "background research which substantially increase the cost of their services" absent prior notice the source is unreliable. 28 F.3d at 284. Field fails to demonstrate CSC had prior notice

7

the information it received from credit providers such as Montgomery Ward, J.C. Penney, or Beneficial National Bank was inaccurate. Field fails to advance evidence CSC had prior experience where these credit providers reported inaccurate information. *See Fomusa v. Energy Sharing Resources, Inc.*, No. 96 C 50410, 1999 WL 436596, at *3 (N.D. Ill. Jun. 28, 1998) ("[a]bsent some prior indication that the information is inaccurate, it is reasonable and cost efficient to report information without independent verification"). Indeed, Field confuses her § 1681*e*(b) claim with her § 1681*i* claim. Field asserts CSC should have verified information it received from credit providers after Field informed CSC the information was inaccurate. However, Field's argument relates only to her § 1681*i* claim – CSC's duty to reinvestigate after notice that information in the credit report is incorrect. *Henson* provides that "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information" under §1681*i*. 29 F.3d at 287. However, under § 1681*e*(b), CSC is required to follow reasonable procedures in reporting credit information. CSC relied upon information it received from credit providers to issue its initial credit reports. Field fails to proffer evidence CSC knew or should have known its original source was unreliable. As a matter of law, summary judgment must be granted on Field's § 1681*e*(b) claims.

B.  **Actual Damages**

CSC argues Field's § 1681*e*(b) and § 1681*i* claims fail because she did not suffer actual damages as a result of CSC's inaccurate credit reports. Field asserts she suffered mental anguish and emotional distress for CSC's alleged FRCA violations. In response, CSC argues Field cannot recover for mental anguish and emotional distress because she fails to demonstrate its credit reports resulted in a denial of credit, receipt of credit under less favorable terms, or a delayed decision on

8

a credit application. CSC asserts Field's emotional distress arises only because she knew of inaccurate information contained in her credit report.

Under § 1681, humiliation, embarrassment, and mental distress can constitute actual damages. *Casella v. Equifax Credit Information Serv.*, 56 F.3d 469, 474 (2d Cir. 1995); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). In *Casella*, the court rejected plaintiff's claim for pain and suffering where there was no evidence defendants provided the credit report to a third party. The court declined to allow actual damages for pain and suffering "simply because [plaintiff] knew of an inaccurate and potentially damaging item in his credit report." *Casella*, 56 F.3d at 475. The court stated the plaintiff must present evidence a creditor or third-party learned of derogatory information to recover for emotional damages, humiliation, or anxiety. In *Renninger v. Chexsystems*, No. 98 C 669, 1998 WL 295497, at *6 (N.D. Ill. May 22, 1998), the court held plaintiff had not alleged a cognizable injury under the FRCA for emotional distress because the inaccurate credit report was not communicated to a third-party. *See also Stevenson v. TRW*, 987 F.2d 288, 297 (5th Cir. 1993) (allowing emotional distress damages where the plaintiff was denied credit three times and experienced considerable embarrassment from having to discuss his problems with business associates and creditors); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001) (absent evidence a creditor utilized defendant's credit report in denying credit, no actual damages could be awarded).

*Casella* and *Renninger* are instructive. It is undisputed no credit provider relied on a CSC report to negatively evaluate Field's credit application. Field did not receive adverse credit decisions based on a CSC report. Field was not denied credit, she did not receive unfavorable terms of credit, and she did not experience delay in obtaining credit because of a CSC report. Indeed, Field applied

9

for and had credit applications approved during this period – she bought a car, received credit cards, and refinanced her home after she discovered the identity theft. There is no evidence Field suffered embarrassment, humiliation, or mental distress in those transactions. Field voluntarily informed a potential creditor she was the victim of identity theft when applying for a home mortgage. Field claims emotional distress only because she knew of inaccurate information in CSC's reports. Field fails to provide evidence her emotional distress or mental anguish was the result of the disclosure of a CSC credit report. A denial of credit is not required to recover actual injuries under the FRCA. *Guimond*, 45 F.3d at 1333. However, Field must demonstrate actual injury resulting from disclosure to a third-party of inaccurate credit information in a CSC credit report. *Formusa*, 1999 WL 436596, at *4 (absent evidence that third-party requested credit report, plaintiff had no claim for damages). A central purpose of the FRCA is to ensure the "confidentiality, accuracy, relevance, and proper utilization" of consumer credit information. 15 U.S.C. § 1681(b). The FRCA protects improper disclosures of credit information, not the mere risk of disclosure. *See Washington v. CSC Credit Serv., Inc.*, 199 F.3d 263, 266 (5th Cir. 2000).

In addition, Field fails to proffer evidence of her emotional distress. When an injured party provides the only evidence of emotional distress, she must reasonably and sufficiently explain the circumstances of the injury, and not rely on mere conclusory statements. *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000); *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990). Field offers nothing more than conclusory statements of stress and humiliation. She claims: "It has taken a tremendous amount of time and effort, humiliation, and frustration, a lot of bad emotion that went into fixing this." Pl. 56.1 Facts, Ex. A at 208. Her testimony about the humiliation and frustration relates to her identity theft generally, not to CSC's specific conduct and its purported failure to

reinvestigate or adopt reasonable procedures. *See Nekolny v. Painter*, 653 F.2d 1164, 1172-73 (7th Cir. 1981) ("A single statement by a party that he was 'depressed,' 'a little despondent,' or even completely humiliated ... is not enough to establish injury[.]"). Field claims she went to therapy for her identity theft. However, Field fails to advance evidence her emotional distress and need for therapy were specifically caused by CSC's failure to reinvestigate or adopt reasonable procedures. It is undisputed Field never discussed CSC or its conduct at her therapy sessions. Field complains numerous creditors called her workplace, which she contends were harassing and embarrassing. However, it is undisputed those creditors were not attempting collection as a result of CSC information provided by CSC. *See Stevenson*, 987 F.2d at 296 (questioning the relevance of creditor calls when it is not based on consumer credit report). Thus, Field's complaints about harassment by creditors is irrelevant.

Field argues she will present witnesses at trial to testify to her emotional distress, and summary judgment is inappropriate. Field's assertion is frivolous. To defeat summary judgment, Field must proffer evidence to demonstrate a genuine issue for trial. Field does not advance evidence from these witnesses in her statement of additional facts or exhibits. Field contends she worries about future applications for credit. Specifically, she is concerned inaccurate information could appear on her credit reports in the future. The assertion of potential future mental anguish is speculative and cannot constitute a cognizable injury. *Casella*, 56 F.3d at 475 (absent evidence that consumer made an offer to purchase property, future lost opportunity did not state actual damages); *Renninger*, 1998 WL 295497, at *6 (plaintiff's hesitation in applying for a mortgage was too speculative to state a cognizable injury). Viewing the evidence in the light most favorable to Field, she fails to raise a genuine factual issue for trial concerning any injury from CSC's inaccurate credit

11

reports. Consequently, summary judgment must be granted on Field's § 1681*o* negligent non-compliance claim.[2]

C.      **Willful Noncompliance under § 1681*n***

The FRCA allows recovery of punitive damages even if a plaintiff cannot demonstrate actual damages under § 1681*o*. *See* 15 U.S.C. § 1681*n*; *Casella*, 56 F.3d at 476. Punitive damages are available under § 1681*n* when the reporting agency has willfully failed to comply with any FRCA requirement. To establish willful noncompliance, CSC must have "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson*, 987 F.2d at 293. Malice or an evil motive is not necessary to satisfy § 1681*n*. *Fischl v. General Motors Acceptance Corp.*, 7-08 F.3d 143, 151 (5th Cir. 1983). When a defendant engages in willful misrepresentations or concealment, punitive damages are available under § 1681*n*. *Pinner*, 805 F.2d at 1263.

Field argues CSC's conduct is willful because she was forced to repeatedly inform CSC of inaccurate information in her credit report. Field contends CSC failed to delete inaccurate information in the credit reports. However, Field fails to provide evidence CSC willfully concealed or misrepresented information to her. Instead, CSC responded to Field's numerous letters, revised her credit reports, and deleted contested information. Def. 56.1 Facts at ¶¶ 25, 28, 30, 39, 44, 49. CSC conducted investigations into Field's claims of fraudulent account activity, and sent her forms to update her credit history. *Id.* at ¶¶ 41, 52. CSC removed all disputed information from Field's credit report. There is no evidence CSC ignored Field's requests for reinvestigation, or failed to respond to her letters or complaints. Field fails to present evidence CSC substantially delayed

---

[2] Because Field fails to proffer evidence of actual damages to support her § 1681*o* claims, CSC's argument that it conducted reasonable reinvestigation under § 1681*i* is moot.

responding to Field's correspondence or requests for reinvestigation. *See Stevenson*, 987 F.2d at 294 (when credit agency provided report on request, did not conceal information, and investigated the disputed accounts, credit agencies' actions were not willful). Viewing the evidence in the light most favorable to Field, CSC demonstrates it did not engage in willful misrepresentations and concealment, or hinder Field's attempts to correct her credit report. *See Pinner*, 805 F.2d at 1263 (punitive damages are proper when the credit agency attempted to block the consumer from exercising her FRCA rights); *Philbin*, 101 F.3d at 969 (where defendant removed inaccurate information and responded to requests for credit reports, defendant's actions were not willful). As a matter of law, Field fails to demonstrate willful noncompliance under § 1681*n*.

## CONCLUSION

Field fails to raise a genuine issue for trial CSC did not follow reasonable procedures to assure the accuracy of its credit reports under 1681*e*(b). In addition, Field fails to demonstrate she suffered actual damages under § 1681*n* and § 1681*o* to support her § 1681*e*(b) and § 1681*i* claims. Finally, Field fails to demonstrate CSC's willful noncompliance with the FRCA under § 1681*n*. Accordingly, summary judgment must be granted on Count II.

May 2, 2002

ENTER:

*Suzanne R. Conlon*
Suzanne B. Conlon
United States District Judge